Please, the court, counsel, I'm Janet Schraer, and I'm here on behalf of the Defendant Appellant Southwestern Oregon Community College. I'm retaining five minutes for my rebuttal time. Sure. This is essentially a case that arises out of a grade dispute. Nicole Gililland was a community college nursing student who enrolled at the college in 2017. She embarked on a grade dispute based on plagiarism and the reduction of a grade based on a late submitted paper. The college refused to give in to her request to change the grade after quite a bit of work on internally holding hearings, interviewing students, looking at other assignments and things like that. But when the grade did not get changed, Gililland ended up failing a class in the fall. As a result of that, she left. She lawyered up that summer and she ended up bringing this claim in 2019. She went to trial. So we have to take the facts in her favor at this point, don't we? Like the jury found in her favor. So like when you say she left instead of she was kicked out, that seems sort of... She was invited to re-enroll and she did not re-enroll. In any event, she's not there anymore. And she voluntarily went on to finish a poli-sci degree online, I believe, the following term. And she then went to law school. I believe she's still in law school and supposed to be graduating this year. But to follow up on Judge Friedland's question, I understand that the college had its version of the facts and she had her version of the facts, but she won. So I think for you to prevail here, you've got to show us what the error was. Not retell the story, but what was the error that requires us to throw out a jury verdict, which is... That's a big ask. I'm not saying it's impossible, but that's a big ask. I think we should focus your time on what was the legal error that requires us to throw out the jury verdict. There are at least four reasons that the jury verdict should be reversed. And we're only talking about the contract claim, not the Title IX claim. No one has challenged the Title IX claim. But Gilliland had no right to recover in contract under Oregon contract law in the first instance. Secondly, the jury's finding of no discrimination, harassment, or retaliation on the Title IX claim cannot be found on investigation of discrimination. So if there's no discrimination, investigation of discrimination, whether done or not, could not have led to anything that would be helpful to her because there was no discrimination to be found on investigation or remedied. The other two... So that assumes that the Title IX definition would be the same as the discrimination under this policy, right? It doesn't have to be the same. And in this case, if you look at the jury instructions that the jury was given, the Title IX claim definition was broader than that of the discrimination investigation internal policy. But doesn't that mean the jury would have had to find more things to find the Title IX violation? And so they didn't, but they still could find discrimination under the policy? No. The fact that the finding that there was a broadest possible definition, when they said no, there was no discrimination, there was nothing left under the narrower definition of discrimination under the policy that the college had that was left to be found. There was nothing different. And you'll see from all the instructions the way this was argued, there was never a distinction made before the jury about the kinds of things that would fall within the contract and would fall in turn under Title IX. I mean, Plaintiffs' Counsel admitted they're essentially one and the same. They're on all fours. Well, for example, under Title IX, doesn't an appropriate person need to have knowledge of the harassment? And I'm not sure that's one of the criteria for just general discrimination under the policy. I'm not sure that was something that the jury was involved with making Well, were there jury, can you point us to jury instructions on what they had to find for Title IX? Absolutely. Yes. It's in the E.R. And on E.R. 86 or 84, starting on 84 are these. Protected activity within the context of Title IX includes complaints about gender-based institutional bias or discrimination or complaints to any administrator about professors' unequal treatment, sexual harassment of students on account of students' gender. Causal link, which is important to our case that there's no causal link. But causal link under Title IX is within the context construed so broadly. This is, I'm reading from the instruction on page E.R. 49, 84. It's so broad that the plaintiff merely has to prove that the protected activity and the negative action are not completely unrelated. So it's a very broad definition. Anything can fall within Title IX related to a showing of discrimination. They also have a finding that it has to, you'll see on page 85, there's very explicit instructions relating to harassment. And what that means, selective enforcement elements. On page 86, deliberate indifference, retaliation. And then there's a very broad definition of retaliation. Retaliation specifically is called out by plaintiff as being narrower under Title IX, but it's not. If you look at it, the plaintiff merely has to suffer an adverse action, whereas under the college policy, as set out in E.R. 555, the plaintiff must show not just any adverse action, but it has to be as to an educational assignment or study environment of the student complainant. So a plaintiff must show under, on this record, with these instructions, there is no way they could have found discrimination, retaliation, or harassment and somehow found the college breached its contract related to discrimination investigation. So I think, I mean, the appropriate personal language I'm talking about is on E.R. 86. It is part of the instruction. I mean, it doesn't seem like they line up exactly. It's a little hard for me to go back and forth to every page to see what you're saying, but I think there's language in the Title IX instruction that's not what you would necessarily think the definition of the policy would have to be for just discrimination. I'm not sure I understand what you're saying. I mean, I'm just, there are a lot of factors. The jury was told they had to find to find the Title IX claim, and they didn't, but they did find the claim, and they found the claim. If you look at what the discrimination policy and harassment policy is, the Title IX is broader, including who you have to make a complaint to, and these are not, these specifically are not arguments, for one thing, that plaintiff made, nor bases that the trial judge provided. But let me back up for a minute. I think we have a question over here. I'm sorry. So you're saying that under the policy, breach of contract claim, there had to be a finding that the actions taken were because of her sex? The purpose of the policy, the policy simply is procedural. It's what you do if there's a complaint of discrimination. And only relating to sex, though, right? Because couldn't the jury have found defendant would have allowed plaintiff to continue the program if investigated, even though it did not find defendant acted because of plaintiff's sex? No. This was a sex discrimination claim all the way along. And that's what plaintiff's trying to make this now. So in hindsight, now that they had the claim, they're trying to make this into a grade dispute, but absolutely not. The discrimination and harassment policy that they allege was breached is about discrimination and harassment. It is not a grade dispute policy. There is a grade dispute policy, and once she lawyered up, this plaintiff did not choose to dispute the grade under the college's grade dispute policy. She, if you'll read every, every reason that she gives why she should continue on with her damages, even though there's no discrimination, it's essentially because they could have found that I should have won my grade dispute. Well, it's about discrimination leading to the grades. That was the nature of her claim. And I can read you from the jury instruction that the judge gave at the beginning of the case, and he said it's a Title IX claim. Plaintiff contends defendant and its agents illegally and unfairly used discriminatory methods to expel her from the nursing program due to discriminatory gender stereotypes. Plaintiff likewise asserts that defendants' alleged discriminatory acts were in breach of contract. It is a discrimination case that she chose to bring. She did not bring a grade dispute. And let me just go real quickly into you don't even need to reach this. She doesn't have a contract claim to begin with based on Oregon law. This is an Oregon state law case, and Oregon law applies to this case. And there's case law in Oregon starting the Tate case way back over 100 years ago, which said you can have a contract claim based on regulations or requirements published by a college ahead of time that were in breach of contract. And the plaintiff made a claim that he didn't get the degree and dental degree that he wanted. He sued for specific enforcement. The court recognized that because these requirements were published and he was relying on them ahead of time, he in turn could be So I know you have this argument that she didn't see the policy before she enrolled, but she does say she saw the policy within her first semester, and she kept paying tuition. So why isn't there a new contract under Tate every time she pays tuition for every semester? Again, under Oregon law, the McPhail case specifically says that you can't change a contract in midstream without additional consideration. And she enrolled in the college not knowing about Well, she paid tuition every semester. Why isn't that consideration? It's not separate consideration because she was already enrolled. I don't think that's separate consideration as you go along. The question is, did she have it when she enrolled in the college? That's the question presented by Tate. And she didn't know it ahead of time. So as far as I can tell, Tate doesn't really speak to this particular situation, and we have kind of an absence of case law from Oregon courts that speak to what kind of contract students have with the university. But a lot of federal district courts have said that this kind of contract could be a contract. And why would we assume that the Oregon courts would not follow what the federal district courts have done? Well, first of all, federal district courts aren't Oregon law. I understand that, but we have nothing that speaks to this in Oregon law. So is there any reason to think all these federal district courts have done this wrong? Well, yes, because they don't follow Oregon law. And the weaker case is a recent Oregon case about whether you can have an implied in fact contract when the patient did not know about the policies of the medical clinic ahead of time, and he tried to sue on a failure to follow their policy how to discharge him. And the court said, no, that's not an implied contract where there's no evidence that he knew about it before he went to the clinic. And it doesn't matter that he knew about it later, and he continued to seek medical care there, and I presume he paid for it. That would be consideration. But I think the weaker case that is cited in our materials clearly addresses this issue on most recent Oregon contract law. So I don't believe you get past there is no contract to enforce. And, again, even if there is, with the finding of no discrimination here, it simply didn't, there could be no reason to investigate, to have been found, which in turn would have led to this damages. I think I'm well into my... Do you want to reserve? Excuse me? Do you want to reserve your time? Yes. Okay. Very well. I definitely do. Presiding Judge Owen, Judge Friedland, Judge Reyes, counsel, may it please the Court. My name is Brandon Mark. I'm of the firm Parsons, Bailey & Latimer, and I'm proud to represent Nicole Gilliland here before the Ninth Circuit. I'd like to pick up where the discussion left off, and I can take the, I think, the discussion in sort of reverse order. But, of course, I'm happy to take any guidance from the panel. So let's, starting with Tate, I'd just like to clarify and correct the record. Judge Friedland, you said that the record suggested that my client first saw the policy sometime in her first semester. Actually, the record is pretty clear that my client saw that policy before she enrolled, before she even was in the nursing program. And this is at SER 231. So the question is, so it was, and it was referring to this policy, it was something that you had received in the fall of 2017 in Glandstedt, but you weren't referencing it. In fall of 2017 is when my client started the nursing program. My client corrects him. Answer, sooner. I enrolled in 2016. I had to do the year of prerequisites. And she, that's referencing her discussion that she saw this policy before she enrolled. So this, there's no daylight between the facts in our case and the facts in Tate. My client received this policy at the end, at the outset. At SER 230, pardon me, 212, I believe she references as part of the policy. So there is no difference between the facts in Tate and the facts in this case. And again, I understand that the appellants stake a lot of ground in their appeal brief on this idea that my client did not receive it after that, or receive it later. That's not what the facts show. It seems like it doesn't matter anyway, because she definitely saw it sometime before. She was paying tuition again after she saw it, it seems. She did. And then after this whole thing first started, she actually went, she knew that the policy existed, and she testified again. And I think this is, I don't have the exact pin site, but she said she went to the place where the dean's office was, where they investigated harassment, and was told to go to talk to Tim Daly, which she then did. This was before the expulsion hearing. And then again, and then many months later, after nothing had happened, remember, she goes to Tim Daly, and says, this is what I've passed. This is what I've done. This is why I think I'm being treated this way. And that night, the president of the school calls her and says, well, there's no investigation, because you've never done a formal investigation. The next day, she sent the policy again. And then a few days later, maybe the very next day, she sends an email and says, I want to initiate a formal complaint. Allie McGeehan, the person who is named as the person in the policy, says that's enough to initiate a formal complaint. And so all of those things together, at some point, a contract was formed, and the terms of that contract were the policy. Now, I'd like to also address this notion that the policy is somehow narrower than Title IX. So first off, Title IX, as we all know, is related only to sex or gender discrimination, right? It's not, it does not include other types of discrimination or harassment. The policy on its face, its scope is much broader than that, right? It says that the college, corrective action will be taken by the college to stop any form of discrimination or harassment. That's, I believe, in the third sentence of the policy. Now, the policy does include a definition of harassment, which is far broader than Title IX, including gender identity as one of the protected classes. But as the district court noted, there is no definition of discrimination. So when my esteemed counsel says that the definition of discrimination is narrow in the policy, there is no definition of discrimination. The only thing it says is it will stop any form of discrimination. And so, and again, this was also made clear to the jury as part of the presentation. My client was not a lawyer at the time, right? She didn't know the ins and outs of Title IX versus, you know, sex-based discrimination or, you know, and if you remember, this is one of those sort of bleeding-edge cases, you know, in terms of whether this is gender identity discrimination. My client believes she was discriminated against based upon her history and her work history, right? And that's not necessarily so clearly sex discrimination. And I understand why the jury may have been hung up about that. But they could clearly see that there was some discrimination happening here. I mean, the facts specifically, and I will also say the, I disagree with the notion that the retaliation provision is somehow narrower in the policy as well. The policy, and again, I would go back and you can look at the record. I think my esteemed colleague misrepresents what happened at the trial when she says that there was no distinction made between the policy and Title IX. In fact, at numerous times during the trial, and these are all cited in our brief, we went through all the steps, the procedural rights that the policy includes that Title IX does not include and really specifies that once a complaint is made in good faith, and it even says may violate, the initiation of a complaint that may violate this policy, triggers all these rights, right? The complaining party is not supposed to know at the outset, am I definitely harassed or discriminated in the policy? All I know is I feel like I am. I'm coming to the school in good faith. I'm making a complaint, and now I'm asking for protection. And the facts of the retaliation here cannot be clearer, and they're not rebutted. What Susan Walker did to my client after calling her unsafe with patience, which was a false accusation, she knew it was, she then... I read the facts. I'm sorry. I know, I know. So I have a question about the emotional distress damages, because emotional distress damages are not usually available in contract, and I'm having trouble understanding how the physical pain that was from the suicide attempt is not then, it can count to get you these emotional damages. Okay. So first of all, I don't know that any of the non-economic damages were for emotional distress. The jury wasn't asked that question, and the jury was allowed to... Well, what are the $1 million in non-economic damages? They could be for retaliation, or pardon me, they could be for loss of reputation, harm to reputation. My client has had to live with being called a cheater, a plagiarizer. She's had to, she had to first explain all these to another undergraduate school that let her in. She said to explain... So it seems though that in the trial and in the district court that everyone was assuming that these were emotional distress damages because there was the discussion about bodily harm, which only would have mattered if it was emotional distress. So it seems like you've shifted gears, as far as I can tell. I don't think that's fair. I mean, I will say that I probably missed something in the J&OV briefing, but when you go back and look at the record, I mean, the evidence that we presented about her harmed her reputation, I mean, it's a lot. And in fact, I had to just write her a letter the other day that's going to go to the Massachusetts Bar to explain all of this yet again. She relives this over and over again. I think the other component was loss of life activities that have nothing to do with work. She's had to relive her, I mean, sorry, restart her life. All this time that she was going to be a nurse and spend all this great family time with her kids at home because she was going to have this great nine-to-five job, that's all been gone. Now she's studying on the weekends. She's studying at night. She doesn't have quality time. She's had to relive all of that. That's another compensable form of non-economic damages that the jury was able to do. The last paragraph of that instruction was misplaced. It really should have gone under the subsection 1 of that instruction, but I think the jury was smart enough to understand that we didn't have to prove physical injury first to award reputational harm or harm for loss of activities. But leaving that all aside, the case law and the facts, again, and I reemphasize that the standard here is that the substantial evidence supports the jury's findings of whether or not what happened here could have caused my client to attempt to take her own life. And it is regrettable. But the case law, and we cited numerous cases, and even though the appellant suggested those were all Title IX cases, they were not. They were across the spectrum, Title IX, Title VII, 1981, negligence actions, Iowa civil rights case actions. In all those cases, the courts have recognized in their approximate cause scenario when they, and again, what is the object of this contract? The very object of a contract is to protect a party from psychic harm, right? I mean, at its core, yes, maybe there's also some additional things that happen that, you know, like grades that are changed that have to be corrected, but at its core, what is a discrimination, you know, a contract to protect somebody from discrimination about? It's protecting their emotional and psychological well-being. And so that was the very object of the contract. Well, I mean, you also have economic damages, though, so you have a large chunk of money that's not psychological well-being. It's, you know, losing the tuition and paying the law school tuition and all these other things. So, I mean, I don't think you want to say it's only emotional, because then you're going to lose those. So I'm not sure what you're saying. Well, I mean, I think that's the object of it. But, I mean, obviously, in our estimation, if the procedure rights had been, I mean, think about all the things that they could have found if they'd just done one investigation. And I will say, my esteemed colleague said that they interviewed students. They didn't interview anybody, right? Jeff Whitey testified. He was the person who's named in the policy. The vice president of instruction admitted that not a single person was interviewed. Not even my client was interviewed. I mean, and so we believe that, in fact, if the procedure rights had actually been acted upon, that something would have been discovered, including Susan Walker's changing of my client's grade after the fact without any basis. I mean, she just surreptitiously changes the grade behind the fact. And so, and if that had been done, then an investigation had actually been done, we believe that these things would have been discovered. And, again, this is like a loss of chance. I mean, obviously, we don't know for sure. Let me interrupt you on policy. Sorry. Would that have breached the provisions of the policy? What have? What you're describing as having been done, changing the grades and secretively doing things like that. Well, we believe, does it, sorry, does that explicitly violate the policy? Yeah. No. No, what violates the policy is the fact that they didn't ever interview anybody about that or look at any of the records about it or do, in fact, they never did anything about it. The last set of communications was my client saying, will you look into this? And they never got back to her because she was ineligible for readmission. That's, that's SER 809. This is not a question of whether she could have gotten back in or not. She was, in Susan Walker's own words, ineligible for readmission because of the two Fs. That second F that Susan Walker gave her behind the scenes that she asked somebody to investigate, which they never did, was this, that was the straw that broke the back. That's the, that was the reason why she could no longer continue in the program. Let me ask you, counsel, so let's, this is just hypothetically, let's say I agree with you on the contract claim, so, but on the non-economic damages. If I'm concerned that maybe there were some things in the mix, maybe some of the non-economic damages are okay for the reasons you said, but let's say I'm concerned that maybe there was some emotional distress that shouldn't have been in the mix. What do we do if we have a portion of a damage from a jury's verdict that we're a little concerned about, that it may have been some improper consideration? Do we send it back to the district court? Does the district court have the opportunity to remit? Do we have to retry that portion of the case? Like, what do we do? Well, I think that actually, Your Honor, unfortunately, given the procedure posture, your only choice is to affirm, because there is no basis for sending this back. There was no new trial motion made. That was waived. There's no, that relief is not on the table. Well, they have appealed the appropriateness of the non-economic damages, and I think they have a pretty good argument that you've got emotional distress damages, and you're not allowed to get emotional distress damages on contract. So I think we have the ability to vacate that whole part of your damages award, and that seems to be validly on appeal right now. Okay, but on what basis would you, I guess my question is, I'm not trying to be flippant, but on what basis would you find that the million dollars is for emotional distress damages? We would find that they're emotional distress damages, because it seems like that's what everyone was assuming, and it seems like you've argued that it's okay, because there's the suicide attempt, which is physical harm. But I've had a lot of trouble finding any case that allows emotional distress damages when the mental distress, in turn, causes the physical distress instead of the other way around. Right, and I, well, and I think that's why the case law in Oregon, if you look at the Keltner case and all of the cases it talks about, they don't talk about causation, and I think you need to be very clear about, look in the case law. It talks about a mental or emotional harm that is attendant to physical harm. It talks about it being a concomitant with the physical harm. But do you have any case that has it in this causal order? Because all the other ones are like, the doctor breached the contract, and so therefore the person had a medical problem, and then they had emotional distress. I mean, the contract and the physical harm are very tied. And that's not true in your way of getting to these damages. But there's also, okay, but that's, the case law does not suggest, the Oregon case law does not suggest that the causation has to go that direction, or that it could not be both, right? That you have emotional harm that leads somebody to have physical injury, and then it leads to more emotional harm. And I don't know that any of this is for emotional harm. I mean, some of it could have just been for the physical injury and for the reputational harm, and for the loss of life activities. I have no basis for knowing that any of this is for emotional harm. So let's get back to my question. So let's say we are concerned, and you may not agree with it, but let's say we are concerned that some of the damages may have been based on conduct that we don't think is allowable for this type of damage. What do we do in that situation? What should we do? I know you want us to affirm. Assuming that we think that there was an error there, how do we fix the error? Does it go back for a retrial on this particular damages? Can the district court remit? And you have to accept the remitter or ask for a retrial? What do we do? I honestly don't know what the right procedure or answer is on that. I'll be honest with you. I would like to, I mean, I think that the premise of the question is wrong. I think that Keltner and all of the Oregon law says that emotional distress damages would be available in a situation like this. I mean, I understand that there's no case law, but just because we're the first doesn't mean that, you know, that doesn't mean it's wrong, right? I mean, somebody has to break new ground on some of this stuff. And, I mean, I think if you look at the facts, again, the only evidence, and the Ninth Circuit has, this court has affirmed before on unrebutted expert evidence of causation on this question. And so the only evidence on this was that this caused emotional harm. And it caused her suicide attempt, right? I mean, there's no unrebutted evidence, or there's no contrary evidence on this point. Where in the record do we find that this damage for the non-economic damages could be something other than emotional distress? All the evidence that we've cited in the record about the reputational harm, all the things that she's said before. Was that part of the instruction, that reputational harm would be a non-economic damage? Yes. Well, let me ask you this. Isn't reputational harm an economic damage? No, it's a non-economic damage in Oregon. It's specifically defined by statute as non-economic damage. As is any loss of life activities that don't relate to gainful employment. That's also considered non-economic damages. Okay. So you're arguing that the jury could have found not only emotional distress, but non-economic damages in the form of loss of reputation, loss of life activities, because evidence was presented on those two issues, and the instruction instructed the jury that they could consider those as damages that they could award non-economic. You've done a much better job than I have in articulating my position. And those were, reputational and the loss of activities, they were not disputed. There was nothing below. I don't understand how you're, I mean, you admitted this last paragraph is problematic, and I just don't understand how we can get around that it says that the non-economic damages are available to plaintiffs. This is at ER 89. Available for plaintiff's breach of contract claim if plaintiff proves. And then the second thing is causes bodily harm. And then the third thing is the contract, so the defendant had reason to know when the contract was made that the breach of contract would cause mental suffering for reasons other than mere pecuniary loss. Yeah. And so that should have said, and I will admit that when that, back to the jury, I was like, that should have said emotional distress, non-non-economic damages. Because those, sorry, those elements come directly from coffee, which comes from the restatement. The wanton recklessness, that's only for emotional distress. That doesn't apply to any of the other categories of non-economic damages. And I will admit it could have been written better. But when you think about the error, that actually made it harder because the jury's thinking that I have to prove all those things or may have thought I had to prove all those things for the other category. So the error, if there is any, actually made my job more difficult because it also put me under a wanton or recklessness standard with regard to the other non-economic damages. But to be fair, that last paragraph should have only applied to the emotional distress damages. It's straight out of the coffee case. This is what we talked about ad nauseum in the charging instructions was, you know, why did we have to prove for emotional distress damages? There's no case law that suggests we needed any of those other three elements for any of the other categories. So you're saying the line right ahead of that, that said any injury to plaintiff's reputation, the jury should have understood that it could give those damages without the next paragraph. Well, yes. Yes. And that is legally true. So as a matter of law, we did not need to prove that it was wanton recklessness, that there was a physical injury or any of that for reputational harm or loss of life activity. And if I didn't make that clear, I apologize. That was an instructional error. What that first line of that last paragraph should have said, in order to award emotional distress damages, they must prove those three things. Okay. Anything else? All right. Thank you very much, Counsel. Thank you. So, Your Honor, picked up on exactly what I was going to say. I mean, the instruction, I heard an admission that there's error in the jury instruction, and we think the jury instruction was correct. It says you can only recover emotional distress damages or non-economic damages at all, not just emotional distress. But what do we do about the fact that if that paragraph hadn't been there at all, he could have gotten damages, probably, for injury to reputation? So the problem here is we don't really know at this point whether the jury was awarding emotional distress damages improperly or awarding damages for injury to reputation. Well, first of all, we don't believe they get any emotional distress damages at all. This says they can only get them if there is a breach caused by bodily harm. Okay. Sorry. I'm going to try to ask my question again because I don't think you're understanding it. Say this last paragraph of the instruction on non-economic damages on ER 89 was not there. So just imagine that the jury had only been instructed that it was number 3, that they could give non-economic damages for injury to plaintiff's reputation, which was number 3, right at the top of ER 89. Would that have been improper, to tell the jury that they could give non-economic damages for injury to reputation? Yes. They don't get non-economic damages under Oregon law. Okay. I thought they didn't get emotional distress damages under Oregon law. What case do you have that says you can't get injury to reputation damages under Oregon law? I believe it doesn't fall within the category of the kind of damages you can receive in contract. It was not foreseeable based on violation of a discrimination policy in light of the fact that the jury found no discrimination. So I don't think that translates. So are you saying that you cannot recover non-economic damages in a contract claim under Oregon law? Here, they were not foreseeable. The non-economic damage claim that they were making were not foreseeable on the contract, if, in fact, this policy was a contract. Well, there's a lot of law on foreseeability regarding injury, claims of injury, mental distress. But what about non-economic damages regarding loss of reputation or life activities? I think in this circumstance it doesn't, because it doesn't translate because of the nature of the policy that we're talking about. So I think you're arguing on these facts she should lose. But is there any Oregon case that says you cannot recover damages for harm to reputation on a contract? I can't cite you one right now. It's probably in the briefing. I can't cite you one right now. So you're saying it comes down to foreseeability. Isn't that a question of fact for the jury? No, it's a question of law in this case. Because this is a discrimination policy and because it's a discrimination policy, things that arise out of items that are not discrimination or a finding of no discrimination don't apply. But I want to answer a couple more of your questions that came up. First of all, counsel said... Scott v. Kissling requires a physical impact. The suicide attempt is not a physical impact by the defendant. So the bodily harm part of it doesn't... there's not a legal basis for that in this record. Counsel said, well, the policy of the college is different than Title IX because it's unique and it involves the gender identity situation. The trial accepted that this theory applied under both Title IX as well as under the college's policy. To answer your question, Judge Friedland, the discrimination and harassment policy are virtually identical if you look at the two of them. At ER 86, the jury instruction definition of harassment and then on ER 554 on the policy definition of harassment which requires it be based on a person's race, color, religion, ethnicity, sex or sexual orientation. And so the, oh, I'm upset about my grades is simply not a part of the kind of thing that is to be dealt with under the discrimination and harassment policy that the court allowed to go to the jury and allowed the judgment to be entered on. So at a minimum, I heard my opposing counsel admit that there's instructional error here. At a minimum, the contract claim needs to be reversed. We think a judgment in favor of the college and against the plaintiff on the contract claim should be entered. But at a minimum, you send it back to the trial court to harmonize. So as I read the page of the jury instruction that says Title IX generally and then sex-based harassment, it says under Title IX where do you think there's a definition of discrimination that is just about the policy of the college as opposed to Title IX in the jury instructions? Is there any definition of discrimination in the jury instructions other than a Title IX definition? You mean relating to the contract? Yeah. No, but the contract was before them as Exhibit 106 and it expressly says what we're talking about based on color, religion, ethnicity, sex or sexual orientation. So the whole fundamental basis of the case was discrimination based on sex here. That was the only thing that was alleged. The initial instructions that I read. I just wanted to make sure I wasn't missing a jury instruction. It doesn't sound like I am. Thank you. Thank you, Counsel.
judges: OWENS, FRIEDLAND, Rayes